LARIMER COUNTY RESERVOIR COMPANY v. PEOPLE EX REL. LUTHE.

1. In the absence of any written law upon the subject a person would have the legal right to construct his dam in a non-navigable stream upon the public domain, and thus preserve water for useful purposes, so long as he did not in any way encroach upon the superior rights or interests of others.

2. The policy of both the state and federal governments, in this country, has always been to encourage the preservation of water for useful purposes.

3. There is nothing in the constitution or statutes of this state which renders the act of utilizing as a reservoir a natural depression including the bed of the stream, or at its source, unlawful *per se.* But, of course, in doing so, the superior rights of others must not be impaired.

4. The legislature cannot prohibit the appropriation or diversion of unappropriated water for useful purposes from natural streams upon the public domain, but it has the power to regulate, in a reasonable and constitutional way, the manner of effecting such appropriation or diversion.

*Appeal from District Court of Larimer County.*

THE facts are stated in the opinion.

Messrs. HAYNES, DUNNING and ANNIS, for appellant.

Mr. T. M. ROBINSON, for appellee.

HELM, J.    This action is upon an information in the nature of a *quo warranto.*    It was brought in the court below for the purpose of procuring a forfeiture of the appellant company's corporate franchise.

1. The important question presented by the pleadings for determination in this court relates to the right to

utilize the bed of a non-navigable natural stream upon the public domain as a reservoir, for the purpose of storing and preserving water that would otherwise run to waste. The theory of relator is that such act is illegal *per se*, and that whether or not injury results to other persons therefrom, is a matter of secondary importance. He concedes that the constitution and statutes recognize the right to construct and maintain reservoirs, and thereby preserve water at certain seasons of the year for use at other seasons, but contends that this right can only be exercised by the construction of such reservoirs at a distance from the stream, and a diversion of water into the same by means of ditches or other contrivances adequate for the purpose.

In the absence of any written law upon the subject, a person would have the legal right to construct his dam in a non-navigable stream upon the public domain, and thus preserve water for useful purposes, so long as he did not in any way encroach upon the superior rights or interests of others.

The government alone could complain. But in this part of the country the policy of the governments, state and federal, has always been to encourage the preservation of water for irrigation and other useful purposes. The rainfall is comparatively light, the soil, without additional moisture, generally unproductive, and therefore a peculiar necessity exists for carefully husbanding water. There is nothing in the unwritten law which countenances interference by government with the application of the foregoing principle.

But it is said that our constitution modifies this doctrine. Section 6 of article 16 is relied upon. The language thereof is as follows:

"The right to divert unappropriated waters of any natural stream to beneficial uses shall never be denied. Priority of appropriation shall give the better right as between those using the water for the same purpose." *    *

The maxim, *Expressio unius est exclusio alterius*, is here invoked. It is claimed that when the constitution recognizes the right to appropriate water by diversion, it excludes the appropriation thereof in any other manner. Further, that the word "divert" means to take or carry it away from the bed or channel of the stream; that therefore respondent's act of utilizing a natural reservoir in the bed of the stream, and thus storing surplus water for future use, not being a diversion in the sense of the constitutional provision cited, is in conflict therewith.

We are not prepared to concede the correctness of counsel's position. It is our opinion that the above is not the most natural and reasonable view to adopt concerning the meaning of the constitution. The word "divert" must be interpreted in connection with the word "appropriation," and with other language used in the remaining sections of that instrument referring to the subject of irrigation. We think there may be a constitutional appropriation of water without its being at the instant taken from the bed of the stream. This court has held that "the true test of the appropriation of water is the successful application thereof to the beneficial use designed, and the method of distributing or carrying the same, or making such application, is immaterial." *Thomas v. Guiraud et al.* 6 Colo. 530.

The supreme court of California — *McDonald v. Bear River Company*, 13 Cal. 220 — defines the word "appropriation" in this connection as follows: "This appropriation is the intent to take, accompanied by some open, physical demonstration of the intent and for some valuable use." We consider these definitions applicable to appropriations of water in this state; that is to say, we are of opinion that when the individual, by some open, physical demonstration, indicates an intent to take, for a valuable or beneficial use, and through such demonstration ultimately succeeds in applying the water to the use designed, there is such an appropriation as is contemplated

by our constitution and statutes.  While a diversion must of necessity take place before the water is actually applied to the irrigation of the soil, the appropriation thereof is, in legal contemplation, made when the act evidencing the intent is performed.  Of course, such initial act must be followed up with reasonable diligence, and the purpose must be consummated without unnecessary delay.

If this conclusion be true, it follows that respondent might make a valid appropriation of surplus water in the manner pursued, even though an actual diverson from the bed of the stream did not take place till a subsequent date.  The act of utilizing as a reservoir a natural depression, which included the bed of the stream, or which was found at the source thereof, was not in and of itself unlawful.  Holding this view, we must reverse the judgment of the court below.

2. But the privilege so recognized is, of course, qualified by the condition that no injury to others shall result through its invocation.  He who attempts to appropriate water in this way does so at his peril.  He must see to it that no legal right of prior appropriators, or of other persons, is in any way interfered with by his acts.  He cannot lessen the quantity of water, seriously impair its quality, or impede its natural flow, to the detriment of others who have acquired legal rights therein superior to his.  And he must respond in proper actions for all injuries resulting to them by reason of his acts in the premises.  It is hardly necessary to add that he cannot, in any event, interfere with the flow of even the surplus water to a greater extent than is requisite for the beneficial use designed.

3. But it is urged that using the beds of streams in this way will lead to serious discord, contention and trouble; that it will be productive of a multiplicity of suits, and ought to be regarded as against "the policy of the law."

That some of the objectionable consequences mentioned may follow such use is possible; but this fact is not sufficient to overcome the considerations upon which the foregoing conclusions are based.   We think, however, that no serious apprehensions need be entertained. While the legislature cannot prohibit the appropriation or diversion of unappropriated water, for useful purposes, from natural streams upon the public domain, that body has the power to regulate the manner of effecting such appropriation or diversion.   It may, by reasonable and constitutional legislation, designate how the water shall be turned from the stream, or how it shall be stored and preserved.   With this authority resting in the hands of the legislature, the evils apprehended by counsel, if really threatened, may be avoided.

The judgment is reversed and the cause remanded.

*Reversed.*