## No. 11,480.

### BACA IRRIGATING DITCH CO., ET AL. *v.* MODEL LAND AND IRRIGATION CO., ET AL.

Decided January 3, 1927.

## Water adjudication proceeding.

### *Decree Affirmed.*

1. APPEAL AND ERROR—*Conflicting Evidence.* The appellate court will not interfere with a water adjudication decree which is justified by the evidence.

   Fact findings by the trial court, based on conflicting evidence, will not be disturbed on review.

2. WATER RIGHTS—*Junior Priorities.* A water claimant in an adjudication proceeding may not complain of an adjudicated priority which is later than his own.

3. *Notice.* The owners of a water system who initiate a new irrigation enterprise, are charged with notice of the adjudication decrees, with the rights of ditches and reservoirs thereunder, and also with notice as to the amount of water theretofore actually appropriated, and of the then flow of water in the stream. At their peril they must determine whether or not there is a surplus of water in excess of the amounts theretofore judicially awarded to others.

4. *Appropriation—Notice.* The fact that a ditch owner makes an enlarged use of water in common with other users from the stream at flood time and when the demands of senior appropriators have been satisfied, is not of itself sufficient notice of an intention to acquire additional priorities.

5. *Appropriation—Elements.* While an appropriation consists of a diversion of water from a natural stream and the application thereof within a reasonable time to a beneficial use; it is also true that there must be an intent to appropriate a definite amount of unappropriated water to a definite beneficial use, and there must be affirmative notice of such intention.

6. *Appropriation.* The fact that a ditch owner from time to time, when the water is not needed by prior appropriators, beneficially uses an amount in excess of the amount decreed to him, does not of itself constitute a valid additional appropriation.

*Error to the District Court of Las Animas County, Hon.
A. C. McChesney, Judge.*

Mr. JOSEPH W. HAWLEY, Mr. B. MALCOM ERICKSON, for
plaintiffs in error.

Messrs. McHENDRIE & SHATTUCK, for defendants in
error.

*En banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the
court.

IN a statutory adjudication proceeding for establish-
ing priorities of right to the use of water for irrigation
in water district No. 19, the original or first decree there-
in by the district court of Las Animas county was
rendered August 10, 1903. In a subsequent proceeding
the same court, January 12, 1925, made a supplemental
decree which is the one now before us for review. This
controversy is between the Baca ditch, representing it-
self and the other corporation plaintiffs in error, on the
one side, and the Model ditch and the John Flood ditch
corporations on the other. The assignments of error
are: (1) Error in refusing to decree to the Baca ditch
certain priorities of right to the use of water in the Las
Animas river as of date prior to January 22, 1908.
(2) Error in decreeing to the John Flood ditch priorities
of right in excess of 50 cubic feet per second of time.
(3) Error in decreeing to the Model ditch any priorities
of right to the use of water for direct application, and
error in decreeing excess storage priorities.

As is the usual practice in this state the trial court
ordered a reference for the taking of evidence, making
of findings of fact, and reporting of a proposed decree.
When this report was returned by the referee each of
the parties to this writ filed exceptions to such of the

unfavorable findings and to such adverse clauses of the proposed general decree as apply to their respective claims. At the hearing of these exceptions request by some of the parties was made and granted by the court for leave to take additional evidence by the referee. Upon the entire record, as thus augmented, the trial court, after careful consideration, in the main approved the findings and the draft of the proposed decree, but with some important modifications made by the court itself. This writ of error, of course, concerns only the immediate parties, and the questions for decision are fairly indicated in the above assignments of error. The record, even as abstracted, is voluminous and counsel for plaintiffs in error are to be commended for condensing the issues into the three succinct paragraphs above set forth, and counsel on both sides for materially lightening our labors by restricting their able and fair arguments to these three vital issues.

The important question is raised by the first assignment. Plaintiffs in error with laudable frankness admit in their brief that their primary reason for suing out this writ of error is because the trial court refused to sustain their theory on this branch of the controversy which, in substance, is that the priorities sought by the Baca ditch should antedate the priority awarded to the Model ditch. Since our conclusion is that assignments numbered 2 and 3 are clearly without merit, we first dispose of them and shall, for our own convenience, consider the assignments in reverse order.

1. As to assignment numbered 3, learned counsel for plaintiffs in error are in error in saying that the statement of claim of the Model ditch makes no claim for direct irrigation. We have read this statement with care and find that there is a claim of priority for a large volume of water for direct delivery and also a claim for storage rights. It is entirely clear that the decree as to the Model ditch for direct delivery and storage is in all respects amply fortified by the evidence. Indeed, we

find no evidence in this record which impairs, or tends to lessen the probative effect of the claimant's own evidence. It seems that the chief, if not the only reliance of plaintiffs in error, as will appear in our discussion of the first assignment, is not that there is not ample legal evidence for the court's findings of fact, as to all these ditch priorities, but rather that the court erred in its deductions or conclusions with respect to the principles of law applicable to such evidence.

2. We have carefully studied the objections included in assignment numbered 2. The evidence, though in a measure conflicting, fully justifies the priorities awarded to the John Flood ditch. Our established practice in such circumstances does not permit us to interfere with a decree thus sanctioned.

3. Taking up assignment numbered 1, we observe first that the language employed therein indicates, what a study of the entire record and the briefs of counsel confirm, that the meat of the grievance of the Baca ditch is that its priorities awarded in this supplemental decree are restricted to a date for their inception later than the date of the priorities awarded in the same supplemental decree to the Model ditch. If the Baca ditch claims a larger volume than it got by the decree, we cannot interfere on that ground, for that question was properly determined on conflicting evidence by the lower court. To elucidate the only fairly debatable and important question here requires a further statement of the facts. The original or first decree in this water district of 1903 gave to the Baca ditch several distinct direct irrigation priorities to the waters of the Las Animas river, the earliest of which goes back to 1861. The method of utilizing the appropriations thus secured has always been through open ditches leading from the river to the lands to be watered. It may be true, as the Baca corporation claims, that its ditches were originally constructed with the idea of gradually extending and enlarging them and the acreage to be irrigated as time

and means of the appropriators permitted. However that may be, no additional ditches or enlargements or extensions of original ditches that carry the Baca priorities were made after the 1903 decree was rendered. Subsequent to its entry, however, there has been at times an enlarged use of the water upon an increased acreage. In the light of this original intention to enlarge the scope of the enterprise, and because of this subsequent enlarged use, the theory of the Baca ditch owners is that the trial court, under the evidence taken in this supplemental proceeding, should have made an award of priority to the Baca ditch, to the extent of the enlarged use in the light of the increased acreage, and that this enlarged use should date back to about October 1, 1903, which was approximately the time when such enlarged use is said to have been initiated (instead of June 12, 1920, as was done), and to antedate the Model priority that was fixed by the decree as of date June 28, 1908.

As we understand the contention in behalf of the Baca ditch, it is that though the John Flood ditch priority of October 20, 1902, is superior, as to time, the Model priority of June 28, 1908, is inferior. Additional facts germane to the Baca and Model controversy are that when the 1903 decree, on which all of the original Baca priorities rest, was made, the carrying capacity of the Baca ditch was estimated at about 100 cubic feet of water per second of time. The 1903 decree awarded to it a volume of water amounting to 54.44 second cubic feet. The supplemental decree of 1925 now before us, awarded to the Baca an additional volume of 45.56 cubic feet but postponed the priority thereto to a date later than the Model priority; the combined award of the two decrees being 100 second cubic feet, though the carrying capacity at the date of the later decree was estimated at about 120 second cubic feet. Regardless, however, of this apparent conflict as to the capacity, it is conceded by all parties that the carrying capacity of the Baca ditch at the time of the 1903 decree was in excess of the

volume then adjudicated to it. It sufficiently appears from reliable testimony that, in common with all other ditches in that region and throughout the state generally, whenever, after the 1903 decree, there was flowing in the river an unusual body of water due to floods, heavy rains or snows, and when water was not demanded or needed by senior appropriators, there was diverted from year to year from the river and carried in the Baca ditch water in excess of the decreed volume of 1903. The Model ditch owner admits that, in the circumstances, the Baca and other ditch owners pursued this course, but denies that thereby a priority for the enlarged volume thus diverted was either intended or acquired by the Baca owners, as against the intervening rights such as the Model initiated in and to the unappropriated water of the stream January 20, 1908, the date fixed by the court as the date of its priorities.

For our present purpose, and in view of our conclusion as to the relative rights of the Baca and Model and as between them alone, we may concede, though we do not hold, that the trial court was justified in finding as a fact that the Baca owners had appropriated, after the 1903 decree was rendered, 45.56 second cubic feet. We may safely make this concession since the trial court here made this priority inferior to the rights of the Model, and the latter may not complain of an adjudicated priority that is later than its own. The question for decision, therefore, is further narrowed, and it is whether the clauses of the decree are right which fix the relative priorities of the Baca and Model ditches. In 1908 the owners of the Model ditch enterprise conceived the idea of a system of irrigation consisting of ditches for direct application of water, and storage reservoirs taking their supply from the unappropriated waters of the Las Animas river. Their object was to reclaim a large tract of about 20,000 acres of arid land and make it productive. At a large expenditure of hundreds of thousands of dollars such a system was constructed and put into opera-

tion.  The owners of this enterprise, of course, were charged with notice of the original decree and the rights of the various ditches and reservoirs thereunder.  They were also charged with notice as to the amount of water theretofore actually appropriated, and with notice of the then flow of water in the stream, and at their peril must determine whether or not there was a surplus of water therein in excess of the amounts theretofore judicially awarded to others.  If they found in this case that there was not unappropriated water available for their scheme, and proper inspection disclosed that others' had priorities of right to all of this unappropriated water, of course they could acquire nothing by carrying out the scheme they had in mind.  The originators of this scheme were acquainted with the nature of Las Animas river and were practical and experienced men.  They were required to proceed with reasonable diligence.  Among other things they knew of the priorities of the Baca ditch.  They admit that after the 1903 decree was rendered the Baca ditch, as hereinabove stated, as did other ditch owners taking water from the Las Animas river from time to time and from year to year, diverted from the river through their ditches a larger quantity than their decreed priorities and applied the same to their lands.  The trial court would have been justified in finding specifically from this evidence, and the fact sufficiently appears from the record, that after the 1903 decree was rendered the Baca owners had neither constructed new, nor enlarged their original, ditches.  They never made any physical demonstration to indicate that they intended to acquire a priority of additional water.  It is doubtful if the actual carrying capacity of the Baca ditch is sufficient to carry more water than the volume decreed to it.  But as already intimated that is not important here.  The evidence as to an increased acreage is conflicting and there is doubt about what, if any additional acreage, was brought under cultivation.  The court specifically found that the Baca owners had not

by any physical demonstration of any kind upon the ground given any notice to the world of an intention to make an additional appropriation in any amount. And it failed to file the notice required by our map and statement act until June 12, 1920, which was the date fixed for the Baca priority by supplemental decree. Under this state of facts we think the decision of the trial court was right. The ingenious and plausible argument of counsel for the Baca ditch is based largely upon the assertion that the trial court rested its decision, that the Baca priority should not relate back to the time of the alleged first enlarged use, solely on the ground that it did not file its map and statement with the state engineer and the county clerk and recorder until after the initiation of the rights of the Model ditch. The record does not bear out this assertion. The court in its findings did say: ''But, inasmuch as no notice was given of an intention to appropriate said additional amount of water until the filing of the map and statement in the office of the State Engineer of the State of Colorado, on June 12, 1920,'' yet the court, immediately following the quoted language thus continued: ''and, inasmuch as after the entry of the decree of August 10, 1903, there was no enlargement of the ditch or other visible work done on the ditch or on the ground evincing an attempt to appropriate, or from which an intent to appropriate an additional amount of water could be inferred, which was sufficient to give notice to subsequent appropriators or put them upon inquiry, the priority for said ditch for such additional amount of water can only relate back to the time of the filing of said map and statement, as aforesaid.'' So it will be seen that the decision of the trial court, as to the relative priority of the Baca and Model ditches, was not based solely, or at all, upon the failure of the Baca ditch owners to file a map and statement until long after the initiation of the rights of the Model ditch, but that it was based upon the other failures mentioned, and the decision might well have been put

solely, upon the entire failure of the owners of the Baca ditch to give such reasonable notice by physical demonstration on the ground as to make it necessary for persons who wished to acquire any rights in the stream to take notice thereof before attempting to acquire any rights. It is not necessary for us to determine in this case the effect upon the question of relative priorities of right of the failure to file the map and statement within the statutory period. In some of our sister states statutes similar, but not in the same language as our own act, have been construed as imposing as the only penalty for such failure, limiting the right to the time when the water is actually applied and used, instead as of the date of the beginning of the work of construction. *Bean v. Morris,* 159 Fed. Rep. 651-653. Our statute does not contain the exact language of statutes in other states so interpreted, but, as stated, the exigencies of this case do not require us to determine its effect. It is sufficient to say that the only notice of any kind or character which the owners of the Baca ditch ever gave of their intention to acquire additional priorities from the stream is the statutory notice which was filed about twelve years after the owners of the Model ditch had acquired their rights to the waters of the stream by actual work upon the ground and the filing within the statutory time of the map and statement. The enlarged use of water from the stream by the Baca owners, according to the great weight of the evidence, was only such use as all other ditch owners make of waters from a natural stream at flood time, and when the demands of senior appropriators have been satisfied. This of itself is not sufficient notice of an intention to acquire additional priorities by these plaintiffs.

Besides, two of the directors of the corporation that owned the Baca ditch, and who were active in the management, testified that there never was any intention on the part of the Baca owners, until long after the Model

ditch had acquired its rights, to get any waters from the Las Animas river in addition to the priorities awarded by the decree of 1903. While an appropriation consists of a diversion of water from a natural stream and the application thereof within a reasonable time to a beneficial use, it is also true that there must be an intent to appropriate a definite amount of unappropriated water to a definite and beneficial purpose. There must be affirmative notice also of such intention. We think the record justifies the statement of counsel for defendants in error that the Baca owners can claim nothing further than that they did from time to time, when the same was not needed by prior appropriators, use an amount of water for beneficial purposes in excess of the volume decreed to them in 1903. This, of itself, or in connection with other pertinent facts, does not constitute a valid appropriation. Cases bearing more or less directly on what we have said are: *Larimer Co. Res. Co. v. People, ex rel.,* 8 Colo. 614, 9 Pac. 794; *Ft. Morgan Land & Canal Co. v. Ditch Co.,* 18 Colo. 1, 30 Pac. 1032, 36 Am. St. Rep. 259; *Farmers' Union D. Co. v. Rio Grand Canal* Co., 37 Colo. 512, 86 Pac. 1042; *Fruitland Co. v. Kruemling,* 62 Colo. 160, 162 Pac. 161.

It follows that the decree of the district court, in so far as it affects the parties to this writ, must be, and it is affirmed.

MR. CHIEF JUSTICE ALLEN not participating.