No. 20,204.

ROCKY MOUNTAIN POWER COMPANY *v.*
WHITE RIVER ELECTRIC ASSOCIATION.
(376 P. [2d] 158)

Decided November 5, 1962. Rehearing denied December 3, 1962.

46

Messrs. FAIRFIELD and WOODS, Mr. CHARLES J. BEISE, Mr. CHARLES E. MATHESON, for plaintiff in error.

Mr. FRANK DELANEY, Mr. KENNETH BALCOMB, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

PLAINTIFF in error, to which we will refer as the Power Company, seeks reversal of a judgment of the district court of Rio Blanco county by which it was denied the right to protest the petition of White River Electric Association to change the point of diversion of 180 cubic feet of water per second of time to a point approximately four miles upstream from the headgate through which said water was withdrawn under three priorities awarded to the Meeker Power Ditch No. 181. White River Electric Association will be referred to as the Association. Upon filing of the petition by the Association the trial court ordered that notice be given to interested parties as provided by law, and fixed October 25, 1961, as the day for hearing.

October 18, 1961, the Power Company filed a motion requesting that the Association be required to produce

certain documents. This motion was supported by an affidavit in which it was asserted that the water rights claimed by the Association had been abandoned, and that any change in the point of diversion would cause substantial injury to vested rights of the Power Company. On the same day the Power Company filed a motion in which it was alleged that it was the owner of vested rights in the water of White River and its tributaries, as evidenced by the filing of a claim therefor in the office of the state engineer, and in the Statement of Claim filed by the Power Company for adjudication in the district court of Rio Blanco for Water District No. 43 in proceeding No. 1269, to which the court was referred. The Power Company asked that the Association be required to make its petition more definite and certain in several respects.

October 19, 1961, the Power Company filed its motion for continuance to permit its examination of various voluminous records, and to take depositions of various persons, including officers of the Association, so as to prepare its protest to the petition and proof in support of that protest.

October 25, 1961, the trial court overruled the motion for continuance by written order, the pertinent part of which is as follows:

"And thereupon the Court heard the argument and statements of counsel, and it appearing to the Court from the recitals contained in the motion and from the statements and admissions of counsel for the Rocky Mountain Power Company that said Company has not used or diverted water from the White River or any of its tributaries, or from any other stream in Water District No. 43 and is not the owner or claimant of any ditch structure or reservoir by which water has been diverted or stored during the last calendar year prior to the filing of the petition for change in point of diversion herein or at all. And for that reason the peti-

tioner has no vested rights which will be injuriously affected by the proposed change and as a mere claimant of an inchoate right has no status to object to the proposed change in point of diversion, under numerous decisions of the Colorado Supreme Court.

"And it further appearing to the Court that this cause was regularly set for hearing on this date and that the Court has arranged its business accordingly and that the motion for continuance is not supported by affidavit and is not otherwise sufficient.

"IT IS THEREFORE ORDERED that said motion for continuance be, and the same is hereby overruled."

At the same time the trial court ruled against the Power Company on its motion to require petitioner to make its petition more definite and certain; and also overruled its motion to require petitioner to produce certain documents on the grounds hereinabove quoted, and, as stated by the court:

"And it further appearing to the Court that the motion is too general and does not designate specific documents which are to be produced and which are sought to be examined and copied and is otherwise insufficient."

Prior to further proceedings in open court the Power Company filed a written protest to the change in point of diversion sought by the Association, alleging that the change would be injurious to the vested rights of the Power Company; that the Association had abandoned its water rights; that laches on the part of the Association should bar the change in point of diversion; as well as other objections not necessary to repeat here. Upon commencement of the hearing on the petition of the Association in open court a motion was made by its attorneys to strike the protest of the Power Company on the grounds that the court had previously ruled that it could not be heard in the proceedings and had no rights to protect in the premises. On such grounds the court struck the protest and dismissed the Power Com-

pany from the case and refused to consider its offer of proof tendered to establish its right to be heard as a protestant to the change in point of diversion. The trial court then proceeded to hear the evidence in support of the petition, and granted the change in point of diversion.

November 3, 1961, the Power Company filed a motion for new trial, alleging in substance as grounds therefor that the trial court erred:

1. In ruling that the Power Company, as claimant of water rights, had no status or right to appear and protest the petition of White River.

2. In denying the Power Company the right to offer evidence to establish its status.

3. In striking the written protest filed by Power Company.

4. In denying Power Company the right to establish a record for appeal by making an offer of proof in support of its claim to be entitled to participate in the proceedings in support of its protest.

In support of its motion for new trial the Power Company attached thereto an affidavit setting forth the offer of proof which it theretofore had been denied the right to present to the trial court. The affidavit recited that the Power Company is the owner of the proposed Sweetwater Hydroelectric Project, which project upon completion will divert water claimed by it from the White River to the Sweetwater Creek, a tributary of the Colorado river, thereby utilizing an approximate 3,000 foot head drop for the generation of electric energy. The affidavit set forth that construction of the Sweetwater project was initiated September 7, 1957, and that approximately $690,000 has been spent in the diligent prosecution and construction of the project; that statements of claim for water are on file with the state engineer and in the district courts in Water Districts 43 and 53. The affidavit further averred the fact of abandonment by the Association of the water rights for

which a change in point of diversion was being sought. No counter affidavits were filed.

The trial court denied the motion for a new trial and as ground therefor again held that the Power Company not having applied water to a beneficial use during the preceding year, or at all, was a mere claimant of an inchoate right, thus having no vested rights which would be affected by the change in the point of diversion and for that reason had no status to protest the petition.

We must assume for the purpose of this review that the statements set forth in the motions filed by the Power Company, those contained in the protest tendered for filing which the trial court refused to consider, and the statements in the motion for new trial together with the affidavit in support thereof, are true. Hence the question we are called upon to resolve is whether the interest of the Power Company in the waters of the White River and in the proposed change in point of diversion is such interest as the law requires before a protest by it could be made.

█ The priority dates originally decreed to the water, the diversion of which the Association seeks to move upstream, are 1911, 1918 and 1937. Assuming that the Power Company diligently prosecutes the work upon which it has already expended $690,000, and ultimately makes application of the water claimed to beneficial use, it would be entitled to a priority date related back to the commencement of the project. The basic law in this connection is not disputed. As stated in *Denver v. Northern Colorado Water District*, 130 Colo. 375, 276 P. (2d) 992:

" * * * (3) that although an appropriation is not complete until actual diversion and use, still, the right may relate back to the time when the first open step was taken giving notice of intent to secure it (*Sieber, et. al., v. Frink, et al.*, 7, Colo. 148, 2 Pac. 901; *Baca Co. v. Model Co.*, 80 Colo. 398, 252 Pac. 358); (4) that right

to relate back is conditional that construction thereafter was prosecuted with reasonable diligence, and conditional further that there was then 'a fixed and definite purpose to take it up and carry it through' (*Fruitland Irrigation Co. v. Kruemling*, 62 Colo. 160, 162 Pac. 161; *Wyoming v. Colorado*, 259 U. S. 419); and (5), that the questions of reasonable diligence and of fixed and definite purpose are questions of fact to be determined by the trial court from the evidence."

■ If, as claimed by the Power Company, the Association had abandoned the water originally decreed to it, then there would be no valid or existing appropriation of water which could be made the subject matter of a petition to change the point of diversion. If in fact the original decreed water rights have been abandoned the water originally decreed belongs to the stream and is available for subsequent appropriators who would otherwise have been junior in point of time.

The Power Company, upon completion of its project, would be the senior appropriator as against the Association if the Association had in fact abandoned its decreed rights prior to the commencement of the work by the Power Company. Such abandonment might well have been a material factor involved in the decision of the Power Company to undertake the development. It had a very definite interest in securing a determination of the question as to whether there was an existing water right which could be made the subject matter of a decree for change in the point of diversion. It should not be compelled at its peril to proceed with diligence to completion of its contemplated project, expending in that process very large sums of money on the expectation that at some time in the future, after a change in the point of diversion has been ordered, it would then be able to establish that there was no existing water right of the Association entitling it to petition for a change in the point of diversion. It is conceivable that

a number of years might well be consumed in a diligent prosecution of the work in good faith. If the priority date of the Power Company is to be adjudged senior to that of the Association because of an abandonment of water rights by the latter, the Power Company has a right to know that fact upon an adjudication of the issues tendered by it. If there has been no abandonment then admittedly the Power Company would be a junior appropriator, and in the event of such a determination might decide not to complete its planned project, since the water necessary to its operation would be subjected to the prior rights of the Association.

 Under the circumstances disclosed by the record before us we conclude that the Power Company was the owner of "vested rights" within the meaning of C.R.S. '53, 147-9-22 (7) which provides that a petition for change in the point of diversion of water shall set forth:

"That the proposed change will not injuriously affect the vested rights of others in and to the use of water or if such change will injuriously affect the vested rights of others than the terms and conditions suggested by the petitioner to prevent such injurious effect and to protect the parties affected."

We conclude further that the Power Company was the owner of a "vested right" within the meaning of C.R.S. '53, 147-9-25 which refers to the hearing to be held by the court on the petition for change in point of diversion and such protests as may be directed thereto. This section in pertinent part provides:

"If it shall appear that such change will not injuriously affect the vested rights of others, the change shall be permitted by the decree to be given by court. If, however, it appears that such change will injuriously affect the vested rights of others, the court shall deny the application unless the court is satisfied that by the imposition of terms and conditions such injurious effect may be prevented, in which case the court shall decree the change upon such terms and conditions."

■■■ This court has recently held that one who has taken the necessary first step to initiate an appropriation of waters and subsequent thereto has proceeded with diligence to finance and construct the works necessary to make an application of water to beneficial use, is entitled to a conditional decree defining his rights as of the date of the first step taken, regardless of compliance with the map and statement act, C.R.S. '53, 147-4-1. *Metropolitan Suburban Water v. Colorado River Water,* 148 Colo. 173, 365 P. (2d) 273. It follows that one who is entitled to a conditional decree defining his rights to water for future application to use has a vested right which he may protect in case of any action by others to destroy or injure that right.

The judgment is reversed and the cause remanded for further proceedings consistent with the views herein expressed.

MR. JUSTICE PRINGLE dissents.