**HARVEY LAND AND CATTLE CO.,**
Applicant-Appellant,

v.

**SOUTHEASTERN COLORADO WATER CONSERVANCY DISTRICT, and State of Colorado, William R. Smith, Acting State Engineer, State of Colorado, Robert W. Jesse, Division Engineer, Water Division II, State of Colorado, Protestants-Appellees.**

No. 79SA426.

Supreme Court of Colorado,
En Banc.

July 27, 1981.

Vranesh & Raisch, P.C., George Vranesh, John R. Henderson, Boulder, for applicant-appellant.

Charles J. Beise, Denver, for Southeastern Colorado Water Conservancy Dist.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Donald H. Hamburg, Sp. Asst. Atty. Gen., Denver, for State of Colo.

ROVIRA, Justice.

This is an appeal from the decision of the water judge denying an application for water rights for six wells in Fremont County, Colorado, brought by the applicant-appellant Harvey Land and Cattle Co. (Har-

vey). The court initially granted conditional water rights for these wells on November 22, 1978; but upon motions for new trial initiated by the protestants-appellees, the Southeastern Colorado Water Conservancy District (Southeastern) and the State of Colorado (the state), the court, on May 18, 1979, reversed its earlier judgment and decree. We here reverse this latter order and remand for further proceedings.

## I.

On June 26, 1972, Harvey applied for water rights for sixteen wells claiming that the water was nontributary. Publication of a resume containing this application was made on July 18, 1972, without any specification that Harvey claimed nontributary water.

After various proceedings before the water referee, during which Southeastern filed a statement of opposition claiming that the waters sought to be appropriated by Harvey were tributary to the Arkansas River, the referee issued a final ruling on July 16, 1975, denying the application as to nine wells, awarding an absolute right as to one well used for domestic purposes, and awarding conditional rights as to the six wells which are at issue here. These six wells were in existence and had been used intermittently for a number of years.

Protests were filed by the state and Southeastern contesting the referee's ruling that Harvey was entitled to conditional rights for the six wells.[1] Before the water court, Harvey conceded that the source of supply for its claimed water rights was tributary and that it was not entitled to water rights for the nine wells for which the referee had denied its application.

At the hearing before the water judge on July 7, 1978, Harvey presented testimony that the wells were drilled at different times between 1918 and 1968, that it had taken and applied some water to a beneficial use for irrigation purposes, that water from certain of the wells could be put to beneficial use for fish propagation and recreation, and that it "has been seeking municipal and industrial use for this water, and has had some favorable indications that the water [from the six wells at issue] could be used for these purposes."[2] The protestants presented no evidence.

The water judge initially held that Harvey was entitled to conditional water rights for the six wells at issue for the following designated uses: "agricultural, irrigation, municipal, domestic, industrial, recreation, and fish propagation." Harvey was ordered to file with the water court quadrennially for a finding of reasonable diligence, pursuant to section 37–92–302, C.R.S.1973, and to comply with water measurement recording requirements deemed essential by the state engineer. The priority date for the six wells was set at April 15, 1968, when drilling on the most recent well began.

In response. to Southeastern's and the state's motions for a new trial, the water court subsequently amended its earlier decision and nullified its prior order. The court found that the evidence presented at trial

> "did not establish by a preponderance thereof, the depth of the wells, the use of water on any consistent basis, and that there was an intent to use the wells for the multiple purposes at the time they were dug. No present program of municipal, industrial, recreation and fish propagation uses were [sic] shown. All wells were dug and in operation erratically for irrigation but the amounts of water actually used and the extent of irrigation was indefinite."

The court concluded as a matter of law that its earlier findings had been unsupported by the evidence, that conditional decrees could not be awarded for wells already in existence, and that it had "erroneously relied extensively on the report of the referee" in reaching its former determinations. The court found support for its rul-

---

1. The protestants initially questioned whether Harvey's domestic well was entitled to the award of an absolute right. They later conceded this issue in the water court.

2. These were the water judge's findings in its decision entered on November 22, 1978.

ing in our recent decision in *Colorado River Water Conservation District v. Vidler Tunnel Water Co.*, 197 Colo. 413, 594 P.2d 566 (1979), and issued an amended judgment and decree dismissing Harvey's application.

On appeal, Harvey argues (1) that the water court erred in concluding that conditional decrees can only be granted for projects which are not completed and, therefore, that it improperly applied the law to the facts of this case, (2) that Harvey presented sufficient evidence in its hearing before the water judge to establish its conditional water rights, and (3) that if we find it necessary to address the legal effect of the court's reliance on the ruling of the referee, the court erred in holding that it could not consider the referee's report and exhibits in arriving at its judgment.

We do not find it necessary to address all these issues because we conclude that the water court erred in determining, as a matter of law, that conditional water rights can only be granted for projects which are not completed.

## II.

This case presents questions regarding the standards of proof to be applied to an application for conditional water rights where the applicant has already completed the drilling of wells which would supply water for the planned appropriation.[3]

An applicant for a conditional water right[4] must establish that he has taken the "first step" toward the appropriation of water—that is, he must show an intent to appropriate and some "open, physical demonstration" of that intent. *Twin Lakes Reservoir & Canal Co. v. City of Aspen*, 192 Colo. 209, 213, 557 P.2d 825, 828 (1977); *Elk-Rifle Water Co. v. Templeton*, 173 Colo. 438, 484 P.2d 1211 (1971). The sufficiency of the application turns on the facts of each case and must be determined

on an *ad hoc* basis in light of the circumstances and facts before the water court. *Central Colorado Water Conservancy District v. Denver*, 189 Colo. 272, 539 P.2d 1270 (1975); *Four Counties Water Users Assoc. v. Colorado River Conservation District*, 159 Colo. 499, 414 P.2d 469 (1966).

An intent to appropriate ordinarily precedes an open, physical manifestation of this intent. Nevertheless, physical acts performed before the formation of an intent to appropriate may be considered as evidence that an applicant has taken the necessary first step toward the appropriation of water. *Twin Lakes Reservoir & Canal Co. v. City of Aspen, supra.* A decree for a conditional water right may be awarded for wells already in existence, even though the priority date attached to the conditional water right cannot be set earlier than the date on which the applicant formed the actual intent to appropriate. *Id. See Elk-Rifle Water Co. v. Templeton, supra.* The water court thus erred in requiring Harvey to prove his intent to use the wells, at the time they were drilled, for all the multiple purposes it alleged in its application.

It is undisputed that the six wells at issue were in existence prior to the filing of Harvey's application in 1972. The drilling of the last well began on April 15, 1968. Harvey's intent to appropriate—to take water and put it to a beneficial use—was in issue, if not as a result of evidence relating to the drilling of the wells, at least by Harvey's application for a water right. We have previously held that the filing of an application for adjudication of a water right may itself be evidence of an intent to appropriate. *Twin Lakes Reservoir & Canal Co. v. City of Aspen, supra.*

In deciding on remand whether Harvey is entitled to a conditional water right, the water court must determine if and when,

---

**3.** Harvey applied for conditional water rights prior to the effective date of Colo.Sess.Laws 1979, ch. 346, 37–92–305(9) at 1368–69. We do not here address what effect, if any, this statutory amendment would have on an applicant in Harvey's situation.

**4.** A conditional water right is "a right to perfect a water right with a certain priority upon the completion with reasonable diligence of the appropriation upon which such water right is to be based." Section 37–92–103(6), C.R.S. 1973.

based on the evidence, Harvey formed the requisite intent. *See id.*

The water court also erred in requiring Harvey to establish certain facts concerning the capacity and use of the existing wells as prerequisites for obtaining a conditional water right. The court found that Harvey's evidence was insufficient because it failed to prove the depth of the wells, the consistent uses of water from them, the amounts of water used, the extent of irrigation, the periods of time during which water was used, the crops produced by means of this water, and the number of acres consistently irrigated. In an application for a conditional water right, however, such evidentiary matters have relevance only as they relate to whether the applicant has taken a first step toward appropriation of water, *see Elk-Rifle Water Co. v. Templeton, supra,* or as they may supply information which is to be set forth in the conditional decree, *see* section 37–92–304(7), C.R.S.1973. Other than as evidence of intent to appropriate and as open, physical demonstrations of that intent, the historical capacities and uses of the wells are irrelevant to a determination of whether Harvey should be decreed conditional water rights on his projected use of water.

At the hearing before the water court, there was testimony that all the wells at issue had been put to intermittent use for irrigation and other purposes, such as stock watering, on Harvey's own land. There were existing concrete fish ponds which could be used for fish propagation, with water available from two of Harvey's wells.[5] A reservoir had been planned which would be capable of being used for recreation and fish propagation by the applicant itself, with water available from three wells.[6] These proposed uses of water are definite and, on their face, limited to providing benefits to Harvey alone. Such uses are distinguishable from mere speculative attempts to appropriate "for the anticipated future uses of *others* not in privity of con-

tract, or in any agency relationship, with the developer regarding that use." *Colorado River Conservation District v. Vidler Tunnel Water Co., supra,* 197 Colo. at 417, 594 P.2d at 568 (original emphasis). Thus, contrary to the water court's determination, the *Vidler Tunnel* case does not require an outright dismissal of Harvey's application.

We reverse the water court's order and remand for whatever proceedings, consistent with this opinion, the water court may require.

ERICKSON, J., does not participate.

---

5. Harvey wells number 10 and 11 are located near the concrete fish ponds.

6. Wells number 1, 2, and 9 are located above the site of the proposed Harvey Bros. Reservoir.