[No. 8476.]

## FRUITLAND IRRIGATION CO. v. KRUEMLING, ET AL.

WATER RIGHTS—*Appropriation—Doctrine of Relation.*  To invoke the doctrine of relation as applied to the appropriation of water, the appropriator must show, as the first step to which he would refer his right, an open, notorious, physical demonstration, conclusively indicating a fixed purpose to diligently pursue, and within a reasonable time acquire, a right to the use of the water.  It must be reasonably calculated to put others on inquiry as to the proposed use, the volume to be appropriated, and the consequent demand upon the source of supply. (165.)

The doctrine does not rest upon the intent of the claimant, but upon outward physical acts and manifestations, in pursuance of such intent, sufficient to afford notice to all comers.

The doctrine is for the benefit of the one who invokes it.  Anything tending to its abuse is to be carefully scrutinized.  The expenditure of a small sum in disturbing earth and rock, conferring with the owner of land that may be desired as the way of a ditch for the proposed diversion, the subsequent purchase of the land, and a preliminary survey to ascertain the practicability of the proposed diversion are not sufficient. (166.)

*Error to Delta District Court.*  Hon. THOMAS J. BLACK, Judge.

Messrs. CATLIN & BLAKE, and Mr. R. D. McLEOD, for plaintiff in error.

Mr. MERLE D. VINCENT, and Mr. MILTON R. WELCH, for Kruemling, et al.

Mr. PORTER PLUMB, for Grand View Canal and Irrigation Company.

Mr. JUSTICE BAILEY delivered the opinion of the court.

Plaintiff in error, the Fruitland Irrigation Company, is claimant of the Fruitland Ditch, and the Onion Valley Reservoir.  One of the defendants in error, the Grand View Canal and Irrigation Company, is claimant of the Castle Peak Ditch, and the several other defendants in

error are claimants of the Dyer Fork Ditch. These ditches and the reservoir are in Water District No. 40, and their source of supply is Crystal Creek and its tributaries.

On February 14th, 1900, a petition was filed in the District Court of Delta County, by one Ayer and others, for an adjudication of water rights within the district, and in conformity with its prayer the court forthwith appointed a referee to take testimony, make findings and report a suggested decree. The referee returned findings, in due course, showing the reservoir and respective ditches involved in this controversy entitled to priorities as follows: The Onion Valley Reservoir, 2,800 acre feet, June 1st, 1900; the Fruitland Ditch, 67.4375 second cubic feet, June 1st, 1900; the Dyer Fork Ditch, 13.25 second cubic feet, September 1st, 1900; and the Castle Peak Ditch, 20 second cubic feet, September 1st, 1900. To these findings plaintiff in error filed objections and exceptions to the effect that the dates of priority of both the Onion Valley Reservoir, and the Fruitland Ditch, should be declared to be May 26th, 1900, and that each should be awarded a conditional decree for additional water; that the Castle Peak Ditch should be decreed a date of priority subsequent to that of the Fruitland Ditch; and that the amount of water to be decreed to the Dyer Fork Ditch should not exceed 5.44 second cubic feet, instead of 13.25, as found by the referee. Those of the defendants in error who are claimants of the Dyer Fork Ditch also filed objections and exceptions to the findings of the referee, asking that the dates of priority therein specified, for both the Onion Valley Reservoir and the Fruitland Ditch, be changed and accordingly declared to be May 17th, 1901.

Upon a hearing, and the introduction of additional evidence the court overruled the exceptions of plaintiff in error, but sustained those of the defendants in error,

claimants of the Dyer Fork Ditch, and on April 28th, 1914, entered a decree, the substance of which, in respect to the dates of priority, is as follows: The Onion Valley Reservoir and the Fruitland Ditch, respectively, May 17th, 1901; the Dyer Fork Ditch, May 15th, 1901. The decree for the Castle Peak Ditch conformed to the findings of the referee, and the respective amounts of water therein found for the other ditches and the reservoir were approved by the court, and made a part of the decree. The Fruitland Irrigation Company, plaintiff in error, brings that judgment here on error for review.

The evidence is not conflicting in any substantial particular. It appears that on May 21st, 1900, Emmet S. Gould and George B. Gould visited the site of the Onion Valley Reservoir, for the purpose of examining the enterprise on behalf of John Gould, James Gould, E. G. Grover, and themselves, at which time they notified a person by the name of Parsons of their intent to acquire his land by purchase or condemnation proceedings for use as a reservoir site, and also paid one Cotton $5.00 to do a little work on or near the proposed site as a token of their good faith, and a manifestation of their intention. At that time they had acquired no title, had made no filings, and had no property rights of any kind in connection with the project. Some time in the summer of that year George Gould visited the place, and saw where this work had been done, that is, earth and rock had been removed at a certain point, but the record does not disclose fully the character and extent thereof. The plaintiff in error, successor in interest of the parties mentioned, fixed the 26th day of May, 1900, when Emmet S. Gould and George B. Gould made some personal observations on the site, and concluded to undertake the irrigation project and appropriate water therefor, as the date which should have been, under the respective statements of claim and evidence adduced in support

thereof, awarded as the priority of both the Onion Valley Reservoir and the Fruitland Ditch.

On May 31st, 1900, George B. Gould secured an option of purchase on the Parsons farm, and paid $25.00 thereon, and on July 13th following, the option having been extended to that date, Parsons executed a warranty deed to his land to George B. Gould, for a stated purchase price of $1,400.00. Meanwhile, some time in June of that year, one Cavalier, a surveyor, was employed to work on the project, and in the course of a few weeks, probably late in July, was replaced by one Bennett, another surveyor. Neither of these men made a detailed survey, but both were engaged, with the assistance of helpers, in running lines to ascertain and verify the practical possibilities of the undertaking. Later one E. P. Martin, surveyor, was employed to take up the work, and arrived at the reservoir site May 14th, 1901, beginning a detailed survey of the reservoir and ditches soon thereafter. The maps which he prepared were later filed in the office of the state engineer, being the first filing made in connection with this claimed appropriation, and fix the date of commencement of the survey as May 17th, 1901, the date of priority decreed by the lower court to both the Onion Valley Reservoir and the Fruitland Ditch. The Goulds personally devoted some time and expended some money in reconnaissance, and preliminary work, that is, work prior to the commencement of a detailed survey, and actual construction.

The question presented is whether the work done before May 17th, 1901, was, upon the doctrine of relation, of such a character as to warrant a decree prior to that date. The court below spoke, concerning the matter, as follows:

"In the matter of the four separate written objecitons filed by the Fruitland Irrigation Company to the findings of the referee as well as the proposed decree in

the matter of the adjudication of water rights and priorities in Water District No. 40, in the State of Colorado, upon the petition of A. J. Ayer and others, I wish to state that after the reported findings· of the referee I examined the evidence in support of the then findings of the referee as to the Fruitland Irrigation Company, and the Onion Valley Irrigation scheme, and I conclude to change the date of appropriation of both the Fruitland Ditch and the Onion Valley Reservoir.

I.was perplexed and given great concern as to the true rule of fixing the date of appropriation when parties sought the benefit of the doctrine of relation; and finally, after consulting all the Colorado cases that seemed to be in point, adopted the theory and rule, as applied to this case, that it depended upon what the evidence showed as to the first actual work done in the construction of the ditch after a definite plan had been formed and sufficient acts done on the part of the claimant to demonstrate the plan and line of what it proposed to do.

In reaching the conclusion I disregarded the evidence of the Fruitland Company as to all steps and work and acts which might be designated or termed preliminary or reconnaissance work for the reason that in my judgment until they had themselves reached a conclusion as to what their ultimate intention, or their then intention, really was that nothing in this preliminary work demonstrated to the world at large what their intentions were with sufficient accuracy to base an appropriation upon.

The only difference between the court and counsel now is, as I understand it, that they claim that preliminary work is sufficient upon which to base an appropriation, and the court takes a different view.''

There is no statute in this state requiring the posting of notice as the inception of the right by relation, but

the doctrine is recognized, and our decisions upon the question declare in substance that the right acquired by diversion and application of water to a beneficial use may, with the aid of proper diligence, relate back to the first substantial act of the appropriator for its acquisition, frequently spoken of as the first step.—*Larimer County Res. Co. v. People,* 8 Colo. 614, 9 Pac. 794; *Sieber v. Frink et al.,* 7 Colo 148, 2 Pac. 901; *Colorado, etc., Co. v. Rocky Ford, etc., Co.,* 3 Colo. App. 545, 34 Pac. 580; *Water S. & S. Co. v. Larimer & Weld Irr. Co.,* 24 Colo. 322, 51 Pac. 496, 46 L. R. A. 322; *Wheeler v. Northern Colorado Irr. Co.,* 10 Colo. 582, 588, 17 Pac. 487, 3 Am. St. Rep. 603; *Cache La Poudre Res. Co. v. Windsor R. & C. Co.,* 25 Colo. 144, 53 Pac. 318, 71 Am. St. Rep. 123; 2 Kinney on Irrigation and Water Rights (2d Ed.), sec. 747. The rule is simple, but it frequently becomes difficult to determine what fact, among those presented in a given case, may be said to be a commencement, a beginning or first step within its contemplation.

The matters presented by this record were not sufficient to invoke the doctrine of relation in favor of plaintiff in error and fix its priority as of the date claimed. Certainly the first step demanded by the rule is nothing short of an open and notorious physical demonstration, conclusively indicating a fixed purpose to diligently pursue and, within a reasonable time, ultimately acquire a right to the use of water, and as its primary function is to give notice to those subsequently desiring to initiate similar rights, it must necessarily be of such a character that they may fairly be said to be thereby charged with at least such notice as would reasonably be calculated to put them on inquiry of the prospective extent of the proposed use and consequent demand upon the water supply involved. *Taughenbaugh v. Clark,* 6 Colo. App. 235. The $5.00 worth of work done on the reservoir site in the form of moving earth and rock late in the spring or

early in the summer of 1900, admittedly a mere token, did not, considered with other facts disclosed, meet the requirement. Neither did the bare fact of purchase of lands a little later do so. The matter does not rest upon the intent of the claimant, but rather upon such outward, physical acts and manifestations in pursuance of such intent as may be deemed sufficient to constitute notice to all who may come. This doctrine is for the benefit. of the claimant, and any tendency toward its abuse should be carefully scrutinized, lest injury result to the public in general in the exercise of the inherent right to divert and appropriate water to beneficial uses, in the light of conditions apparently existing at the time, free from the burden of anticipating the purposes and claims of others, not sufficiently indicated by such physical acts as would charge ordinary intelligence with the nature, purpose and effect thereof.

The grantors of the plaintiff in error did not even entertain an intent which would satisfy the law when on the 21st day of May, 1900, they visited the premises and then and there determined to initiate and ultimately perfect rights by virtue of their irrigation project. The right, as well as the intent necessary to acquire it, has its foundation in practical considerations. There is little doubt that if, upon the completion of the preliminary survey and reconnaissance, the project proved utterly impracticable and unwarranted as a business venture, the present dispute would never have arisen. Therefore, the most that can be fairly assumed is that they determined on that date to construct a reservoir and ditches, if it should prove practical and feasible to do so. This fact could only be ascertained by examining the topography of the surrounding country and verifying such observations by actual survey, and undoubtedly until this had been done, there was not, and in the very nature of things could not have been any definite and fixed in-

tention to proceed further. The law does not permit an intending appropriator to invoke the benefit of remote contingencies to unduly extend the doctrine of relation.

It is unnecessary to here declare as a general principle of law that the date of commencement of a detailed survey is the proper date of priority to be awarded in a controversy of this sort, since there is no contention here that a later day should have been fixed,. nor is it necessary to determine whether the undertaking was diligently prosecuted and completed within a reasonable time. It is enough that the plaintiff in error has no just ground for objection or complaint as to the date of priority decreed to its reservoir and ditch, as the one given is as early a date as, upon any theory, it could under the facts of this case hope or expect to get. The findings of the court upon other questions of fact involved are supported by competent evidence, and the decree entered will not be disturbed in any particular.

The record presents no other question calling for determination, and the judgment is accordingly affirmed.

*Judgment affirmed.*

Chief Justice GABBERT and Mr. Justice WHITE concur.

Decided June 5th, A. D. 1916. Rehearing denied January 2d, A. D. 1917.