## No. 27177

**In the Matter of Application for Water Rights of Virginia E. Wadsworth, Pierre G. Lucot, and Mireille Lucot in Boulder County, Colorado; Left Hand Ditch Company and St. Vrain-Left Hand Water Conservancy District v. C. J. Kuiper, State Engineer, and W. G. Wilkinson, Division Engineer, Water Division No. 1**

(562 P.2d 1114)

Decided April 18, 1977.

Vranesh and Musick, George Vranesh, Stephen T. Williamson, for applicants-appellees.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Edward G. Donovan, Solicitor General, David W. Robbins, First Assistant, Donald H. Hamburg, Special Assistant, James D. Geissinger, Special Assistant, for protestants-appellants.

Fairfield and Woods, Charles J. Beise, Howard K. Holme, for amicus curiae Southeastern Colorado Water Conservancy District.

Fischer, Brown, Huddleson and Gunn, for amicus curiae The Cache La Poudre Water Users Association.

Holland & Hart, John U. Carlson, Arthur B. Ferguson, for amicus curiae Rio Grande Water Users Association.

Saunders, Snyder, Ross & Dickson, P.C., Glenn G. Saunders, W. B. Tourtillott, Frank Maynes, Louis Johnson, Rex Ford Mitchell, Alvin Steinmark, John Lefferdink, Lawrence L. Fenton, Ralph N. Wadleigh, for "Cities Amici," City and County of Denver, Town of Lyons, City of Durango, City of Colorado Springs, as well as Catlin Canal Company, Central Colorado Water Conservancy District and Monfort of Colorado, Inc., Fort Bent Ditch Company, Colorado Canal Company, The Holbrook Mutual Irrigating Company and Las Animas Consolidated Canal Company.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

The proceedings involved here are under the "Water Right Determination and Administration Act of 1969." Section 37-92-101 *et seq.*, C.R.S. 1973. The predecessors in interest to the applicants filed an application for an underground water right pursuant to section 37-92-302, C.R.S. 1973, being a proceeding for the right to withdraw, from a well, water tributary to a surface stream. Thereafter, the applicants named in the caption of this opinion succeeded to all interests of their predecessors. Later, a water referee upheld the use of the well and found that the source of its water was nontributary. Appearing by the Attorney General, the State Engineer, and a division engineer filed a protest to the referee's ruling. The water judge granted a motion to dismiss on the grounds that the State Engineer had no standing to appear as a party and that such an appearance would be in conflict with his other statutory duties. We reverse.

The application for the underground water right "in the river or its tributaries" was filed on June 29, 1972. On July 15, 1974, the water referee wrote to the water division engineer inquiring as to the source of this water. The division engineer responded by document filed in the water court on October 18, 1974, that the probable source of the water was from the Dakota Sandstone.

Acting on his own motion in November, 1974 the water referee caused notice of the application to be republished with the source of the water stated to be nontributary. On January 31, 1975, The Left Hand Ditch Company and the St. Vrain and Left Hand Water Conservancy District filed statements of opposition, each of which specified the ground that the water was tributary. Thereafter, the applicants and those filing statements of opposition stipulated that the water was *tributary*. By letter dated and filed on April 16, 1975, an assistant division engineer advised the water court that the water from the well was considered by the State Engineer to be tributary by reason of outcropping of the Dakota formation. Nevertheless, on July 15, 1975, after mentioning the stipulation and without any evidentiary hearing, the water referee entered his ruling, finding the source of the water to be *nontributary*. On July 25, 1975, the State Engineer and a division engineer, acting through the Attorney General, filed their entry of appearance and protest of the referee's ruling, stating among other things:

"Ground water produced from the Dakota Sandstone by the.subject is hydraulically connected to and will influence the rate of direction of movement of water in a natural stream, Left Hand Creek, and therefore, is tributary, contrary to the referee's ruling."

The applicants moved to dismiss the State Engineer's and division engineer's entry of appearance and protest for the reasons that: (1) they were without standing, and (2) by not having previously filed a statement of opposition they had waived their right to protest the referee's ruling.

In granting the motion to dismiss the water judge stated:

"The State Engineer is the officer designated by the laws of Colorado to administer decrees adjudicated by the Courts of this state, and is required by statute to act as investigator for the Court concerning all applications for underground water decrees, and an advisor to the Court in relation thereto. The Court, after very careful review of all of the law pertaining to the State Engineer's duties in matters relating to adjudication of underground water rights in particular, and water rights generally, finds that the State Engineer has no standing in the Court as party adversary in the adjudication of water rights, and to undertake to seek such a standing would be in conflict with the other statutory duties heretofore set forth."

■ We hold that the State Engineer does have standing and that he could file a protest even though he had not filed a statement in opposition. As we stated in *Hall v. Kuiper*, 181 Colo. 130, 510 P.2d 329 (1973), the South Platte River is over-appropriated. If this particular water is tributary, it is tributary to Left Hand Creek, a tributary of the St. Vrain River, which is in turn tributary to the South Platte River. If we assume for the moment that the water is in fact tributary, and if it is judicially declared to be nontributary, this well (with a capacity of 22 gallons per minute or 55.42 acre feet per year) will deprive the earliest decreed appropriators in a great part of the South Platte watershed of their rights. *See Cache La Poudre W. U. Ass'n v. Glacier View Meadows*, 191 Colo. 53, 550 P.2d 288, 292 (1976). At oral argument, an assistant attorney general stated that there are twenty-eight similar cases pending in this Water Division No. 1, and that similar matters are pending in the other six water divisions of the state. Under the hypothesis we have just stated, one can visualize a specter of chaos to existing, adjudicated water rights.

■ There can be no question that, under the inferences in our Colorado Constitution (*Colo. Const.* Art. XVI, Sec. 5), and under the many cases of this court which need not be cited, the public has a vital interest in preserving the water resources of this state and adhering to correct rules for the allotment and administration of water. Still using the assumptions we have just made, it is essential that the relief requested be granted in order that the people may have their day in court in the assertion of the public interest.

I.

Prior to the adoption of the Water Right Determination and Administration Act of 1969, the State Engineer had no standing to appear as a party. Under our Adjudication Act of 1879, as amended in 1881, C.L. 1921, C. 35, section 1760, 1771, and the Adjudication Act of 1943, C.R.S. 1963, 148-9-10(3) and (4), in order to actively oppose any claim for a water right an objector was required to be the owner of an affected water right. *Bond v. Twin Lakes R. & C. Co.*, 178 Colo. 160, 496 P.2d 311 (1972); and *Hardesty Co. v. Arkansas Valley Co.*, 85 Colo. 555, 277

P.2d 763 (1929).

The 1969 Act changed this. It provides that a copy of a referee's ruling should be mailed "to the applicant, to each person who has filed a statement of opposition, to the state engineer, and to the division engineer." Section 37-92-303(1), C.R.S. 1973. Then within "twenty days after the date of mailing thereof, any person who wishes to protest a ruling of the referee shall file a written protest . . . ." The statute continues by providing that all "persons interested shall be permitted to participate in the hearing either in person or by counsel if they enter their appearance in writing . . . ." Subsections 37-92-304(2) and (3), C.R.S. 1973. The Act defines a "person" as follows:

"'Person' means an individual, a partnership, a corporation, a municipality, the *state of Colorado*, the United States, or any other legal entity, public or private." 37-92-103(8), C.R.S. 1973 (emphasis added).

It seems rather obvious from the foregoing that the State of Colorado is a "person" entitled to protest a referee's ruling and to participate in a hearing thereunder. No one argues otherwise; the point seems to be conceded. Rather, the applicants and the *amici* cities contend that the State Engineer and a division engineer cannot act for the State because the General Assembly has not given them such authority. The applicants have cited a number of cases which they contend support their position. We find none of them controlling here.

Absent clear authority to the contrary, we find it inconceivable that, in a matter as important as the preservation of decreed water rights, the General Assembly would declare that the State of Colorado should appear in judicial proceedings to protect these rights and then fail to provide any means by which the State could appear.

The applicants state to us:

"If the State Engineer can protest to assert the rights of other water users, then other water users would find themselves subject to the undeterminable will of the State Engineer. That is to say that by deciding which cases to protest the State Engineer essentially decides which applications will be granted without undue expense and which ones will bear the expense of extended litigation. This improbable delegation of authority giving the State Engineer unregulated control over the appropriation system is clearly outside the meaning of the governing statutes and the intention of the legislature."

In the *amici* cities' brief it is said:

"We don't believe that the Court would permit someone to participate as an interested party if their interest were simply that of a trouble maker. . . . The good intentions of the various public officials before the Court in this case should not be permitted to pave the road to endless litigation."

If these predictions prove to be true, undoubtedly the untoward results therefrom can be remedied by a rule of this court or legislation by

the General Assembly, whichever may be appropriate.

Our conclusion that it was the legislative intent that the State Engineer may properly appear and participate in a case such as this and under the circumstances here present is based upon the following reasons:

1. The Colorado Constitution mandates the protection of the public interest in water.

2. The 1969 Act contains inferences leading to this conclusion.

3. The mention of the Attorney General in subsection 37-92-304(3), C.R.S. 1973, is significant.

4. The provisions of subsection 1(e) of the Colorado Appellate Rules were adopted in furtherance of the 1969 Act.

We believe we have already expressed ourselves sufficiently concerning the first point,[1] and we now proceed to point 2.

"The state engineer shall be the executive officer in charge of supervising the work of all division engineers, and may direct them as to their supervision of all employees of the state responsible to them. He has executive responsibility and authority with respect to:

"(a) Discharge of the obligations of the state of Colorado imposed by compact or judicial order on the office of the state engineer. . . ." Subsection 37-80-102(1)(a), C.R.S. 1973.

"(k) Such other acts as may be reasonably necessary to enable him to secure the effective and efficient operation of the division of water resources, including power and authority to make and enforce such rules or regulations as he may find necessary or desirable to effecuate the performance of his duties. The making of such rules or regulations shall not be a prerequisite to control of personnel of the division of water resources or the performance of his duties under the constitution or laws of Colorado or any compact, treaty, or judicial decree or decision which does not, by its specific terms, require implementation by such rule or regulation." Subsection 37-80-102(1)(k).

"(1) The state engineer shall be responsible for the administration and distribution of the waters of the state, and in each division such administration and distribution shall be accomplished through the offices of the division engineer as specified in this article." Subsection 37-92-301(1), C.R.S. 1973.

"(1) The state engineer and the division engineers shall administer, distribute, and regulate the waters of the state in accordance with the constitution of the state of Colorado, the provisions of this article and other applicable laws, and written instructions and orders of the state engineer, in

---

[1] It has not been argued and we do not consider the possibility that under provisions of the Colorado Constitution we have the authority to designate the State Engineer as the representative of the State of Colorado in a proceeding such as this one, if such appearance had not been authorized by the General Assembly.

conformity with such constitution and laws, and *no other official, board, commission, department or agency*, except as provided in this article and article 8 of title 25, C.R.S. 1973, *has jurisdiction and authority with respect to said administration, distribution, and regulation.''* (Emphasis added) Subsection 37-92-501(1).

From these statutory provisions, as well as those contained in sections 37-80-101 *et seq.* and 37-92-502, C.R.S. 1973, we find the clear inference and resulting legislative intent that the State Engineer and a division engineer are proper parties in a proceeding such as this.

Subsection 37-92-304(3) provides:

"The division engineer shall appear to furnish pertinent information and may be examined by any part, and if requested by the division engineer, the attorney general shall represent the division engineer."

There is such little reason for the General Assembly to provide for the representation of the State Engineer's division engineer by the Attorney General unless that representation is in connection with a matter in which the division engineer is a party.

Effective April 2, 1970, C.A.R. 1(e) was adopted by this court. It provides:

"The notice of appeal (see C.A.R. 4) for review of the whole or any part of a judgment and decree or order as defined in subsection (a) (2) of this Rule shall designate as appellant the party or parties filing the notice of appeal and as appellee all other parties whose rights may be affected by the appeal and who in the trial court entered an appearance, by application, protest, or in any other authorized manner. If he is not an appellant the division engineer shall be an appellee; provided that upon his application a dismissal may be entered as to him in the absence of objection made by any party to the appeal within ten days from the mailing to such party of such application. The notice of appeal shall describe the water rights with sufficient particularity to apprise each appellee of the issues sought to be reviewed."

The adoption of this rule shortly after the passage of the 1969 Act represents our contemporaneous construction that a division engineer, representing the State Engineer, could be a proper party.

## II.

The water court gave as its second and only other reason for sustaining the motion to dismiss the State Engineer's protest that to appear as a litigant would be in conflict with his other statutory duties. We note, incidentally, that the appearance of the state officials here is not to advance the cause of one appropriator over another, but rather to allow them to fulfill their statutory duty to protect our system of prior appropriation. *See Whitten v. Coit*, 153 Colo. 157, 385 P.2d 131 (1963).

The applicants state that "it is strenuously emphasized that Applicants do not intend to ascribe even the slightest bad faith to these, or any

other, public officials." Under the circumstances, we know of no rule of law or ethical consideration which proscribes an administrator from also being a litigant. We acknowledged such a situation when we adopted C.A.R. 1(e). It is true that, generally, when we find that there are genuine adversary positions between other parties in review of a water case, we grant the division engineer's motion to be dismissed from the appeal in this court. We do not so dismiss when we find that there is not such an adversary proceeding. An example is *Kuiper v. Highland Irrigation Company,* No. 27492, now pending in this court, in which a division engineer, under C.A.R. 1(e), was named as appellee and in which he has moved to be dismissed out of the case. We have not granted this motion because it has not as yet become apparent that otherwise there would be adversary proceedings.

## III.

Not mentioned by the water court, but argued by the applicants, is the contention that, since the State Engineer did not file a statement of opposition prior to the referee's ruling, he and the division engineer were not entitled to file a protest.

The 1969 Act provides that statements of opposition should be filed by the last day of the second month following the month in which an application has been filed, and that the referee must enter his ruling within sixty days of the last day for filing statements of opposition. *See* sections 37-92-302(1)(c) and 303(1). As already mentioned, the Act further provides that any person may file a written protest to a ruling of a referee. Section 37-92-302(1)(d) provides that the docket fee for filing a statement of opposition is $15.00. Section 37-92-304(2) provides in part:

"Within twenty days after the date of mailing thereof, any person who wishes to protest a ruling of the referee shall file a written protest with the water clerk and a copy thereof with the referee. . . . Upon filing of such a protest, the protestant shall pay a filing fee of twenty dollars . . . except that no person who has already entered an appearance, either as an applicant or as an objector, in the matter in which the protest is made shall be charged the twenty-dollar filing fee."

To us, the meaning of the statute is crystal clear: The General Assembly intended that persons, including the State of Colorado, might file protests to the ruling of the referee even though they had not filed a statement of opposition to the application.

While it is not directly involved here, we find significance in the succeeding subsection (3) which permits "all persons interested" to participate in a hearing upon filing a fee for entry of appearance of $20.00, even though they have not previously entered an appearance and have not filed any statement of opposition, protest or other document.

Also, it seems to us that the applicants have destroyed their own argument with the following statement in their brief:

"Applicants do not mean to say that it would never be appropriate for a person to file a protest without having first filed a statement of opposition. When the Referee, in accordance with C.R.S. 1973, § 37-92-302(1) only modifies the application, rather than approving it in whole, it is conceivable that persons who were not opposed to the application as it was published would wish to protest that ruling. Similarly, when the Referee denies the application, a person who was not opposed to its approval in its published form might wish to protest that ruling. . . . In cases such as these it would not only be desirable, but perhaps even necessary, to permit one not filing a statement of opposition to later file a protest."

We find the conclusion inescapable that, under this reasoning, when the State Engineer has advised the referee that the water is tributary and the parties in advance of the ruling have stipulated that the water was tributary, and when the referee without any evidence finds that it is nontributary, "it would not only be desirable, but perhaps even necessary, to permit one not filing a statement of opposition to later file a protest."

The judgment is reversed and the cause remanded with directions to overrule the motion to dismiss the protest and to proceed in consonance with the views herein expressed.

MR. JUSTICE CARRIGAN concurs in the result.

MR. JUSTICE LEE and MR. JUSTICE ERICKSON do not participate.