**BAR 70 ENTERPRISES, INC.,**
Entrant-Appellant,

v.

**TOSCO CORPORATION,**
Applicant-Appellee,

and

**Division Engineer For Water Division
No. 5, Appellee.**

No. 83SA365.

Supreme Court of Colorado,
En Banc.

July 8, 1985.

As Modified on Denial of Rehearing
Aug. 8, 1985.

Musick and Cope, Joseph A. Cope, Robert C. Kerr, Boulder, for entrant-appellant.

Mosley, Wells & Spence, H. Michael Spence, Jacques S. Ruda, Denver, for applicant-appellee.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., William A. Paddock, David Ladd, Asst. Attys. Gen., Denver, for appellee.

QUINN, Chief Justice.

Appellant Bar 70 Enterprises, Inc. (Bar 70) appeals from the judgment and decree of the water judge for Water Division No. 5 granting the application of appellee Tosco Corporation (Tosco) for determination of a conditional water right to divert 200 cubic feet of water per second (200 c.f.s.) from the White River by means of a pumping pipeline with appropriation dates of September 30, 1976, for the first 100 c.f.s. of water and December 11, 1979, for the second 100 c.f.s. of water. Challenging only that part of the judgment and decree with respect to the second 100 c.f.s. of water, Bar 70 specifically contends that the water judge misinterpreted a stipulation between Tosco and Bar 70 as an admission that a 1976 field trip conducted by Tosco's employees satisfied the overt acts requirement as the "first step" in initiating an appropriation. Tosco controverts this contention and asserts that Bar 70 lacks standing to appeal because its participation in the proceedings before the water judge was not based on the filing of a statement of opposition to Tosco's application but only the filing of an entry of appearance. The division engineer, who was designated as an appellee pursuant to C.A.R. 1(e),[1] con-

---

1. C.A.R. 1(e) provides in pertinent part as follows:

 The notice of appeal (see C.A.R. 4) for review of the whole or any part of a judgment and decree or order as defined in subsection (a)(2) of this Rule shall designate as appellant the party or parties filing the notice of appeal and as appellee all other parties whose rights may be affected by the appeal and who in the trial court entered an appearance, by application, protest, or in any other authorized manner. If not an appellant, the division engineer shall be an appellee; provided that upon application, a dismissal may be entered as to the

tends that, regardless of Bar 70's standing, the division engineer does have standing to appeal by virtue of his statutory responsibility to represent the public interest in the administration of water resources in the state. We conclude that both Bar 70 and the division engineer have standing to challenge the judgment and decree and that Tosco's 1976 field trip was insufficient to satisfy the overt acts requirement for a conditional water right. We accordingly reverse that part of the judgment and decree granting the conditional decree for the second 100 c.f.s. of water.

## I.

A summary of the facts leading up to the judgment and decree provides the foundation for our resolution of the issues raised on this appeal. Tosco owns and plans to develop several oil shale-containing properties in the Piceance Basin on the western slope of Colorado. Because extraction and exploitation of oil shale require significant amounts of water, Tosco has obtained several conditional water right decrees in the nearby White River Basin. Relying on a consultant's 1974 report, Tosco determined in 1976 that its water needs in the Piceance Basin could best be met by consolidating its White River water rights into an integrated system. This consolidation, according to the consultant's report, could be achieved by construction of a proposed reservoir, the Miller Creek Reservoir, for which Tosco held conditional storage decrees. Although the report discussed alternative proposals to meet Tosco's water needs in the Piceance Basin, each proposal required the development of a pumping pipeline from the White River to the proposed Miller Creek Reservoir to augment estimated flows to the proposed Miller Creek Reservoir from Miller Creek. If the reservoir were to be supplied with an adequate amount of water, the pipeline, according to the report, would require a capacity of 100 c.f.s. Pursuant to the report's recommendation, Tosco paid the Col-

orado White River Conservation District to conduct a five-year gauging study of Miller Creek for the purpose of determining how much water would likely be available from the creek, since this would determine the amount of additional water needed from the White River and the capacity of the proposed pumping pipeline.

Tosco commissioned a follow-up report to the consultant's 1974 report in order to assess the likely yield from its White River water rights. This subsequent report was issued in May 1976 and showed that, due to a lack of storage capacity in the Piceance Basin, Tosco would need greater storage capacity in the White River Basin than previously anticipated. Because all of Tosco's alternative water supply projects involved the proposed Miller Creek Reservoir, the significance of the 1976 report was that the pumping pipeline to the reservoir would require a substantial but undetermined enlargement of pipeline capacity beyond 100 c.f.s.

In September 1976 several Tosco employees, including a geologist, a civil engineer, and an environmentalist, conducted a reconnaissance to determine the best sites for increased storage capacity in the White River Basin and also to explore alternative diversion points for the Miller Creek Reservoir. These employees walked most of the route of the proposed Miller Creek Pumping Pipeline, took photographs, and recorded various sorts of data, but they did not stake or survey the route or locate United States Geological Survey monuments. Because the site of the pump station for the proposed reservoir was to be located on private property and because Tosco was unable to obtain permission from the owner to enter the property, the field crew was able to get no closer than approximately one-half mile from this site.

In June 1979 Tosco's consultants prepared a map delineating the contours of an expanded Miller Creek Reservoir that would hold approximately 45,000 acre feet, twice the amount initially recommended in

division engineer in the absence of objection made by any party to the appeal within ten

days from the mailing to such party of such application.

the 1974 report. After reviewing further studies conducted in the fall of 1979, Tosco on December 28, 1979, filed in the water court for Water Division 5 an application for determination of a conditional water right to divert 200 c.f.s. of water from the White River through the proposed Miller Creek Pumping Pipeline to the proposed Miller Creek Reservoir. The application stated that the appropriation was initiated on May 29, 1974, by "field investigation and location of point of diversion and by pipeline study and definition." On January 12, 1980, the water judge referred Tosco's application to the water referee pursuant to section 37–92–203(7), 15 C.R.S. (1973 & 1984 Supp.).

On February 29, 1980, Dry Creek Land and Livestock filed a statement of opposition, alleging that Tosco's application would injure its absolute and conditional water rights and that Tosco had not alleged or undertaken the "first step" necessary to initiate an appropriation. The referee, pursuant to section 37–92–302(4), 15 C.R.S. (1984 Supp.), conferred with the division engineer for Division 5 and, after determining that the statement of opposition raised matters of law that required a hearing, rereferred the case to the water judge on May 31, 1980. § 37–92–303(2), 15 C.R.S. (1984 Supp.).[2] Pursuant to the then existing version of section 37–92–304(3), 15 C.R.S. (1973), which permitted participation by all persons interested in the water matter pending before the water judge, Bar 70 filed an entry of appearance on March 9, 1981.

At a pretrial hearing on October 28, 1982, Tosco, as applicant, and Dry Creek Land and Livestock and Bar 70, as objec-tors, filed a joint pretrial statement. The pretrial statement identified both Dry Creek Land and Livestock and Bar 70 as "the owners of absolute and conditional water rights on the White River" and contained the following stipulation:

Applicant and Objectors will stipulate that the correct appropriation date for the first 100 c.f.s. of water claimed in [Tosco's application] will be September 30, 1976 rather than May 29, 1974 as claimed in the application. Applicant and Objectors have not agreed to any other stipulations.

The joint pretrial statement listed the following disputed issues of fact: whether Tosco, as a matter of law, initiated the appropriation of the second 100 c.f.s. of water; the date and method by which Tosco initiated the appropriation of the second 100 c.f.s. of water; and whether Tosco formed and openly manifested the intent to appropriate the second 100 c.f.s. of water claimed in its application. It was further stated in the pretrial data certificate that "[s]ubstantially all disputes, except the date of appropriation of the second 100 c.f.s. claimed in [Tosco's application], have been resolved."

The case was tried on November 30, 1982. Tosco, which did not object or seek to limit Bar 70's participation in the trial, presented evidence of its previously described activities in connection with the proposed Miller Creek Reservoir and Pumping Pipeline. Counsel for Bar 70, who also represented Dry Creek Land and Livestock, cross-examined each of Tosco's witnesses and urged the water judge to deny the application. On April 11, 1983, the water judge entered a decree granting Tosco's

---

**2.** Section 37–92–302(4), 15 C.R.S. (1984 Supp.), provides that the referee shall make investigations to determine whether the statements in the application and the statements of opposition are true and to become fully advised with respect to the subject matter of the application and statements of opposition. In making these determinations, the referee is authorized to consult with the appropriate division engineer or the state engineer or both. In those cases in which a statement of opposition has been filed, the referee is granted discretion not to make a ruling on the application and, instead, to rerefer the matter to the water judge for a decision. § 37–92–303(2), 15 C.R.S. (1984 Supp.).

Following a pretrial conference in this case on March 3, 1981, the water judge rereferred the case to the referee for determination of whether the statements alleged in the application and statement of opposition were true. The referee issued a report of his investigation on April 26, 1982, but did not issue a ruling. The case was then returned to the water judge.

application for a conditional water right to divert 200 c.f.s. of water by means of the Miller Creek Pumping Pipeline for "industrial, mining, retorting, refining, dust control, reclamation, domestic, municipal, recreational and irrigation" purposes. The water judge reasoned in pertinent part as follows:

> [U]nder the facts of this case, when coupled with the stipulation agreed to by the Opponent, the Applicant's work was sufficient to satisfy the physical acts of appropriation upon the ground as of September 30, 1976, for appropriation of 100 cfs and the joinder of those facts with the intent to divert 200 cfs formed by Applicant on December 11, 1979, entitle the Applicant to a conditional decree for 200 cfs of water with appropriation dates for 100 cfs of water on September 30, 1976, and 100 cfs of water on December 11, 1979.

Bar 70 filed a motion for a new trial which was denied, and Dry Creek thereafter withdrew its statement of opposition. Bar 70 then filed this appeal.

We will first address Tosco's challenge to Bar 70's standing to bring this appeal and also the related issue of the division engineer's appellate standing in this matter. We will then consider Bar 70's substantive challenge to the decree.

## II.

Tosco argues that Bar 70's entry of appearance in the trial proceedings as an interested person, although sanctioned by the version of section 37–92–304(3) in effect at the time of the trial,[3] was nevertheless insufficient to confer standing on Bar 70 to prosecute this appeal. We conclude Bar 70's entry of appearance and participation in the trial pursuant to the then existing provisions of section 37–92–304(3), 15 C.R.S. (1973), conferred on Bar 70 standing to appeal the judgment. We are also satisfied that the division engineer, by reason of his responsibilities for the administration of the waters of the state, likewise has appellate standing in this matter.

### A.

The Water Right Determination and Administration Act of 1969 (the 1969 Act), §§ 37–92–101 to –602, 15 C.R.S. (1973 & 1984 Supp.), provides special statutory procedures for adjudicating water rights. A person seeking a determination of a water right or a conditional water right must file an application with the water clerk stating facts in support of the application, including "a legal description of the diversion or proposed diversion, a description of the source of the water, the date of the initiation of the appropriation or proposed appropriation, the amount of water claimed, and the use or proposed use of the water." § 37–92–302(1)(a) and (2), 15 C.R.S. (1984 Supp.). Because the nature of water appropriation makes it extremely difficult to know or identify persons whose water rights might be adversely affected by an application, the applicant is not required to join or notify those persons. Notice is provided to potential opponents through the resume notice procedures of section 37–92–302(3), 15 C.R.S. (1984 Supp.).[4] These re-

---

**3.** We point out that subsequent to the trial of this case, the General Assembly amended section 37–92–304(2), 15 C.R.S. (1984 Supp.), effective July 1, 1983, to eliminate entries of appearance and to provide in certain situations for the filing of a motion to intervene in proceedings before the water judge upon a showing of mistake, inadvertence, surprise, or excusable neglect by the person seeking intervention. *See* note 5 *infra.* The issue we address here, therefore, will arise only in those water matters in which a party or the division engineer filed an entry of appearance prior to July 1, 1983.

**4.** The resume notice procedures require the water clerk to prepare a monthly resume of all applications filed during the preceding month and then cause publication of the resume in such newspaper or newspapers as is necessary to obtain general circulation in affected counties. § 37–92–302(3)(a) and (b), 15 C.R.S. (1984 Supp.). The resume includes the applicant's name and address, a description of the water right or conditional water right sought, and a *description of the ruling sought.* § 37–92–302(3)(a), 15 C.R.S. (1984 Supp.). The water clerk or referee is also required to mail copies to persons whom the referee has reason to believe would be affected by the application or who have requested a copy of the resume. § 37–92–302(3)(c), 15 C.R.S. (1984 Supp.).

sume notice procedures are calculated to alert all water users on the stream system whose rights may be affected by the application and to provide these persons an opportunity to participate in the water right proceeding and to oppose the application.

■ At the time of the proceedings in this case, the 1969 Act provided three methods by which interested persons could participate in water right adjudications. First, any person who wished to oppose the application could file a statement of opposition not later than the last day of the second month following the month when the application was filed. § 37–92–302(1)(b) and (c), 15 C.R.S. (1973). Second, any person who desired to protest a ruling of the referee could file a written protest setting forth the factual and legal grounds for the protest within twenty days of the mailing of the referee's ruling. § 37–92–304(2), 15 C.R.S. (1973). Finally, section 37–92–304(3), 15 C.R.S. (1973), provided that in those cases in which a protest had been filed to the referee's ruling or in cases rereferred to the water judge by the referee, any person interested in the matter could participate in the hearing before the water judge by filing an entry of appearance in accordance with the following procedure:

All persons interested shall be permitted to participate in the hearing either in person or by counsel if they enter their appearance in writing prior to the date on which hearings are to commence as specified in subsection (1) of this section. Each interested person, if such person has not already appeared in the matter [on] which the hearing is to be held and paid an appropriate filing or docket fee, shall pay a docket fee of twenty dollars upon filing the entry of appearance under this subsection (3). Such entry of appearance shall identify the matter with respect to which the appearance is being made. Service of copies of applications, statements of opposition, protests, or any other documents is not necessary for jurisdictional purposes, but the water judge may order service of copies of any documents on any persons and in any manner which he deems appropriate.

These liberal standing requirements in the 1969 Act were calculated not only to ameliorate the difficulty of determining the effect of a requested decree on existing rights but also to assure the adjudication of water rights in accordance with the constitution, Colo. Const. art. XVI, § 6, the 1969 Act, and other applicable laws.

■ No one disputes the proposition that a person filing a statement of opposition to a water right application, § 37–92–302(1)(b), 15 C.R.S. (1984 Supp.), or a person filing a protest to a ruling of the referee, § 37–92–304(2), 15 C.R.S. (1984 Supp.), would have standing to challenge on appeal the judgment of the water court. Here, Bar 70 fully participated in the proceedings before the water judge as an adversary to Tosco. Bar 70 was a party to the pretrial data certificate, cross-examined Tosco's witnesses at trial, and filed a motion for a new trial. Its adversarial participation was in all respects consistent with the role of a party opposing an application for determination of a water right and, to that extent, enhanced the quality of the adjudicative process. Furthermore, if the referee had initially ruled on Tosco's application instead of rereferring the matter to the water judge, Bar 70 would have had an opportunity to protest the referee's ruling. As a protestant, Bar 70's appellate standing would not be subject to challenge. We believe it would be inconsistent with the broad standing provisions of section 37–92–304(3), 15 C.R.S. (1973), to condition Bar 70's standing on the referee's discretionary decision to rerefer the matter to the water judge instead of issuing a ruling. We therefore conclude that Bar 70's entry of appearance pursuant to section 37–92–304(3), 15 C.R.S. (1973), and its active participation at trial provided it with the requisite standing to challenge on appeal the judgment and decree of the water court.

■ Our conclusion is consistent with C.A.R. 1(e), which provides that the notice of appeal for review of the judgment and decree in a water rights proceeding shall designate as appellant the party filing the

appeal and shall designate as appellee "all other parties whose rights may be affected by the appeal and who in the trial court entered an appearance, by application, protest, *or in any other authorized manner.*" (emphasis added). This rule was adopted shortly after the enactment of the 1969 Act and, while not the final word on the proper construction of section 37–92–304(3), 15 C.R.S. (1973), nonetheless represents this court's contemporaneous interpretation of the then existing statutory provisions as related to appellate standing. *Wadsworth v. Kuiper,* 193 Colo. 95, 101, 562 P.2d 1114, 1118 (1977). This interpretation is entitled to some deference, especially when it is noted that there was nothing in the original version of section 37–92–304(3), 15 C.R.S. (1973), to suggest that the choice of one method of participation over another in a proceeding before the water court would affect the participant's standing to appeal the judgment and decree. Clearly, if a party who has entered an appearance pursuant to statutory authorization and has prevailed in the trial court can be named as appellee, with the corresponding burden of defending a judgment, fairness would seem to dictate that in the absence of a countervailing statute or rule of procedure such person should also be able to challenge an adverse judgment as an appellant.[5]

### B.

We now consider whether the division engineer, who was named as an appellee in this case pursuant to C.A.R. 1(e), has standing to file an appeal in those cases in which the engineer entered an appearance in the water court prior to July 1, 1983, pursuant to the then existing provisions of section 37–92–304(3), 15 C.R.S. (1973). In light of our holding that a private person who has entered an appearance under this statute has standing to appeal an adverse decision of the water court, at least where there was no opportunity to file a protest to the referee's ruling, we have no difficulty in concluding that the division engineer has standing to appeal in similar circumstances.

■ Under the 1969 Act, the state engineer is responsible "for the administration and distribution of the waters of the state, and in each division such administration and distribution shall be accomplished through the offices of the division engineer" as specified in article 92 of the Colorado Revised Statutes. § 37–92–301(1), 15 C.R.S. (1973). The statutory responsibility of division engineers must be carried out in accordance with the constitution of the state of Colorado, applicable statutory law, and the "written instructions and orders of the state engineer." § 37–92–501(1), 15 C.R.S. (1973); *see also* § 37–92–202(2), 15 C.R.S. (1973). This responsibility carries with it a clear obligation to represent the public interest in proceedings involving water rights. *See Wadsworth,* 193 Colo. 95, 562 P.2d 1114.

**5.** Our determination that Bar 70 has standing to appeal finds further support in the 1983 amendment to section 37–92–304(3). Ch. 412, sec. 3, § 37–92–304(3), 1983 Colo.Sess.Laws 1425, 1428–29. The 1983 amendment eliminates the "entry of appearance" that existed under the prior law and requires that, as to referee rulings with respect to which a pleading in protest of or in support of the ruling has been filed or as to matters rereferred to the water judge by the referee, any person may move to intervene in accordance with the following procedure:

Any person may move to intervene in proceedings before the water court upon payment of a fee, equal to that for filing an answer to a civil action in district court, except for the state engineer who shall pay no fee, and upon a showing of mistake, inadvertence, surprise, or excusable neglect or to sup-

port a referee's ruling. The water court shall grant the motion to intervene only if intervention is sought within thirty days before any pretrial conference or due date for trial data certificates and intervention will not unduly delay or prejudice the adjudication of the rights of the original parties.

There is a presumption that when a statute is amended there is an intent to change the law, unless the amendment is such that it merely makes more specific what might have been implicit in the prior statutory terminology. *People v. Hale,* 654 P.2d 849, 851 (Colo.1982). It cannot plausibly be argued that the 1983 amendment was merely a clarification of section 37–92–304(3). On the contrary, the amendment clearly changes the law on a person's right to appear in proceedings before the water judge.

The 1969 Act requires that copies of all applications filed with the water clerk be sent by the clerk to the division engineer and the state engineer. § 37–92–302(1)(a), 15 C.R.S. (1984 Supp.). The water referee must consult with the appropriate division engineer, the state engineer, or both, prior to ruling on any application. § 37–92–302(4), 15 C.R.S. (1984 Supp.). This consultation process allows the division engineer and the state engineer to comment on an application without becoming formal parties to the litigation. When the referee rules on an application, a copy of the ruling must be sent to the division engineer and the state engineer, § 37–92–303(1), 15 C.R.S. (1984 Supp.), thereby allowing them to determine whether to protest the ruling as contrary to the applicable legal standards pertaining to the appropriation or administration of water in the state. When the referee rerefers the matter to the water judge without making a ruling, however, the division engineer has no opportunity to file a protest. *See* §§ 37–92–303(2) and –304(2), 15 C.R.S. (1984 Supp.).

██ If the right of appeal in cases rereferred to the water judge by the referee were to be conditioned on the filing of a statement of opposition to the application, the division engineer would be required to oppose practically every water right application that posed even a remote chance of adversely affecting the public interest. We do not believe section 37–92–304(3), 15 C.R.S. (1973), was intended to impose such a heavy procedural burden on division engineers in the respective water divisions of the state. Indeed, this interpretation would frustrate one of the purposes of the statutory consultation process, namely, to allow the division engineer to comment on water rights applications without shouldering the burdens of a formal party to the litigation. We therefore conclude that when the referee has declined to make a ruling on a water right application and has

rereferred the matter to the water judge for a decision, and the division engineer, pursuant to section 37–92–304(3), 15 C.R.S. (1973), has entered an appearance in the water court on or before July 1, 1983, the division engineer has standing to appeal the judgment and decree of the water court.[6]

### III.

We turn now to Bar 70's challenge to the judgment and decree. Bar 70 does not contest that part of the decree adjudicating a conditional water right for 100 c.f.s. of water with an appropriation date of September 30, 1976, but only challenges the adjudicated conditional water right for the second 100 c.f.s. of water with an appropriation date of December 11, 1979. Bar 70's argument in this respect is twofold: (1) the stipulation between Bar 70 and Tosco concerning September 30, 1976—the date of Tosco's field trip—as the proper date of appropriation for the first 100 c.f.s. of water was not an admission by Bar 70 that the field trip sufficed as the overt act for the second 100 c.f.s. of water; and (2) Tosco's activities with respect to the proposed pumping pipeline and reservoir did not satisfy the overt acts requirement for an appropriation of the second 100 c.f.s. of water. We consider these arguments in the order stated.

### A.

The stipulation between Bar 70 and Tosco expressly provided that "the correct appropriation date for the first 100 c.f.s. of water ... will be September 30, 1976, rather than May 29, 1974, as claimed in the application." We agree with Bar 70 that the water judge erred in construing the stipulation as a concession by Bar 70 that the overt acts requirement was satisfied for the second 100 c.f.s. of water.

**6.** Because of the procedural posture of this case, we need not address the right of the division engineer to appeal decisions of the water judge in those cases where the referee has made a ruling on the water right application and the

division engineer has not filed a protest. *See* § 37–92–304(9), 15 C.R.S. (1973) (no appellate review of that part of the judgment which confirms a ruling with respect to which no protest has been filed).

The pretrial data certificate clearly sets out as disputed issues whether, when, and how Tosco initiated the appropriation of the second 100 c.f.s. of water. This statement of disputed issues clearly negates any implication that the stipulation was somehow a concession by Bar 70 that the 1976 field trip satisfied the overt acts requirement for the second 100 c.f.s. of water. Tosco nonetheless argues that, because the overt act may precede the formation of the intent to appropriate and need not reflect the specific amount of water sought to be appropriated, the concession by Bar 70 that the 1976 field trip satisfied the overt acts requirement for the first 100 c.f.s. of water estops Bar 70 from contesting the adequacy of this same field trip to fulfill the overt acts requirement for the second 100 c.f.s. of water. We view this argument as a futile attempt to convert what is obviously a factual stipulation regarding the correct appropriation date for the first 100 c.f.s. of water into a stipulation of law relating to the legal sufficiency of the 1976 field trip as the essential overt act for the second 100 c.f.s. of water.

 A stipulation cannot be used to bind a court in the determination of questions of law or mixed questions of law and fact.[7] On the contrary, it always remains the independent responsibility of the court to decide the law applicable to a particular case and the legal sufficiency of the evidence in regard to a contested claim. *See People in re A.R.S.*, 31 Colo.App. 268, 502 P.2d 92 (1972); *Giovanazzi v. State Bar of California*, 28 Cal.3d 465, 619 P.2d 1005, 169 Cal.Rptr. 581 (1980). Whether Tosco's 1976 field trip was legally sufficient to satisfy the overt acts requirement for the second 100 c.f.s. of water is a mixed question of law and fact, the resolution of which must be made by the court through the application of a legal standard to the particular facts of the case. *See City and County of Denver v. Colorado River Water Conservation District*, 696 P.2d 730,

746 (Colo.1985); *City of Aspen v. Colorado River Water Conservation District*, 696 P.2d 758, 761 (Colo.1985); *Colorado River Water Conservation District v. Vidler Tunnel Water Company*, 197 Colo. 413, 417, 594 P.2d 566, 568 (1979). The water judge, therefore, erred in relying on the stipulation to support the legal conclusion that Tosco complied with the overt acts requirement in regard to the second 100 c.f.s. of water. We are left then to determine whether, with respect to this second 100 c.f.s. of water, the evidence of Tosco's acts relating to the proposed pumping pipeline and reservoir was sufficient to satisfy the overt acts requirement of a conditional water right.

### B.

A conditional water right is "a right to perfect a water right with a certain priority upon the completion with reasonable diligence of the appropriation upon which such water right is to be based." § 37–92–103(6), 15 C.R.S. (1973). "Conditional water decrees are designed to establish that the 'first step' toward the appropriation of a certain amount of water has been taken and to recognize the relation back of the ultimate appropriation to the date of that first step." *City of Aspen*, 696 P.2d at 761. *E.g., Fort Lyon Canal Co. v. Amity Mutual Irrigation Co.*, 688 P.2d 1110 (Colo.1984); *Lionelle v. Southeastern Colorado Water Conservancy District*, 676 P.2d 1162 (Colo.1984); *Four Counties Water Users Association v. Colorado River Water Conservation District*, 159 Colo. 499, 414 P.2d 469 (1966). The burden of proving that the first step has been completed on a particular date is on the applicant for the conditional decree. § 37–92–304(3), 15 C.R.S. (1973); *Fort Lyon Canal Co.*, 688 P.2d at 1114.

 We recently considered the requirements for obtaining a conditional decree in *City and County of Denver*, 696

---

7. A mixed question of law and fact involves the application of a legal standard to the facts in order to arrive at an ultimate legal conclusion regarding a particular issue. *See deKoevend v.*

*Board of Education*, 688 P.2d 219 (Colo.1984); *Lee v. State Board of Dental Examiners*, 654 P.2d 839 (Colo.1982); *Ricci v. Davis*, 627 P.2d 1111 (Colo.1981).

P.2d 730 and *City of Aspen,* 696 P.2d 758. In those cases we emphasized that "a conditional water right becomes established upon the concurrence of an *intent to appropriate* water and the *performance of overt acts* in furtherance of that intent." *City and County of Denver,* 696 P.2d at 745 (emphasis in original); *see also City of Aspen,* 696 P.2d at 761. The intent required is "a fixed purpose to pursue diligently a certain course of action to take and beneficially use water from a particular source." *City and County of Denver,* 696 P.2d at 745; *see Fruitland Irrigation Co. v. Kruemling,* 62 Colo. 160, 162 P. 161 (1916). The overt acts must be of such character as to perform three functions: (1) to manifest the necessary intent to appropriate water to beneficial use; (2) to demonstrate the taking of a substantial step toward the application of water to beneficial use; and (3) to constitute notice to interested persons of the nature and extent of the proposed demand upon the water supply. *City and County of Denver,* 696 P.2d at 745 (quoting *City of Aspen,* 696 P.2d at 762–63); *see also Fruitland,* 62 Colo. at 165–66, 162 P. at 163.[8] The concurrence of intent and overt acts is referred to as the "first step" toward an appropriation. *City and County of Denver,* 696 P.2d at 745–46; *City of Aspen,* 696 P.2d at 761. Although the formation of the intent to appropriate will generally precede the performance of the overt acts, the "first step" in some cases may be completed even though the overt acts occur before the formation of the requisite intent to appropriate. *See Harvey Land and Cattle Co. v. Southeastern Colorado Water Conservancy District,* 631 P.2d 1111 (Colo. 1981); *Twin Lakes Reservoir & Canal Co. v. Aspen,* 192 Colo. 209, 557 P.2d 825 (1976). In either instance, the overt acts must be such as to achieve the three purposes outlined above.

Bar 70 does not contest Tosco's subjective intent to appropriate the second 100 c.f.s. of water as of December 11, 1979. The question raised by Bar 70 is whether Tosco's activities relating to the Miller Creek Pumping Pipeline and the Miller Creek Reservoir were sufficient to satisfy the three purposes of the overt acts requirement. What Tosco basically relies on to satisfy the overt acts requirement is the September 1976 field trip along the route of the proposed Miller Creek Pumping Pipeline.[9] We conclude that Tosco's activities failed to satisfy any of the purposes of the overt acts requirement.

■ Tosco's activities during the 1976 field trip were not of such a character as to satisfy the first purpose of the overt acts requirement—to actually manifest its intent to appropriate water to a beneficial use. Tosco did not conduct a survey of the

**8.** Although we refer to "overt acts," we adhere to our statement in *City of Aspen v. Colorado River Water Conservation District,* 696 P.2d 758, 763 n. 5 (Colo.1985), that "when stating and explaining the action necessary to satisfy the 'first step' requirement, a single act could prove sufficient if it satisfies the purposes of manifesting the necessary intent, demonstrating that a substantial step has been taken, and giving notice to interested persons."

**9.** Tosco places little reliance on the five-year gauging study of Miller Creek conducted by the Colorado White River Conservation District by prearrangement with Tosco. The general study was, at best, preliminary in nature to any specific act by Tosco directed toward the actual application of the water in Miller Creek to beneficial use. That first step, as described in *Fruitland Irrigation Co. v. Kruemling,* 62 Colo. 160, 165, 162 P. 161 (1916),

is nothing short of an open and notorious physical demonstration, conclusively indicating a fixed purpose to diligently pursue and, within a reasonable time, ultimately acquire a right to the use of water, and as its primary function is to give notice to those subsequently desiring to initiate similar rights, it must necessarily be of such a character that they may fairly be said to be thereby charged with at least such notice as would reasonably be calculated to put them on inquiry of the prospective extent of the proposed use and consequent demand upon the water supply involved.

Viewed in this light, the gauging study clearly falls short of satisfying any of the purposes of the overt acts requirement. Similarly, even considering the gauging study in conjunction with the 1976 field trip, we conclude, for reasons discussed in the text, that the sum of Tosco's activities falls short of fulfilling any of the purposes of the overt acts requirement.

reservoir or diversion sites, failed to set stakes or to locate monuments, and did not post signs or publish notices. Furthermore, because Tosco was unable to secure the owner's permission to enter the private property where the proposed site of the pumping station was to be located, Tosco's employees approached no closer than one-half mile to this site. Indeed, Tosco admitted at trial that the September 30, 1976, field trip was a preliminary reconnaissance to evaluate reservoir sites and a number of possible diversion sites. Preliminary activity of this sort can scarcely be said to manifest that which is essential to an intent to appropriate, namely, "a fixed purpose to pursue diligently a certain course of action to take and beneficially use water from a particular source." *City and County of Denver,* 696 P.2d at 745.

 Tosco's 1976 field trip also failed to satisfy the second purpose of the overt acts requirement—to demonstrate the taking of a substantial step toward applying water to beneficial use. While we have held that a detailed field survey under appropriate circumstances can fulfill the substantial step requirement, *City and County of Denver,* 696 P.2d at 748, 754; *Elk-Rifle Water Co. v. Templeton,* 173 Colo. 438, 484 P.2d 1211 (1971); *Four Counties Water Users Association,* 159 Colo. 499, 414 P.2d 469, Tosco's field crew did not conduct a field survey at all, but simply hiked along most of the route of the proposed pipeline and never visited the site of the pumping station. As previously noted, the field trip was admittedly in the nature of preliminary activity and, as such, was far short of constituting a substantial step toward applying water to a beneficial use.

 Finally, the September 1976 field trip was inadequate to fulfill the third purpose of the overt acts requirement—to provide interested third parties with notice of the nature and extent of the proposed diversion and the consequent demand upon the water supply. Tosco's field crew visited the general site of the proposed Miller Creek diversion only once, leaving nothing there that would indicate their inspection or the nature and purpose of their trip. No

survey stakes or lines were set, no signs were posted near the site of the proposed diversion, and no notices were filed in local newspapers. The field crew's activities, which consisted of taking notes and photographs, were not sufficient to alert any person who might fortuitously have been present at or near the site of the nature and scope of Tosco's contemplated diversion; nor, for that matter, were they sufficient to place an observer even on inquiry notice of Tosco's intent to appropriate any water at all. Indeed, if preliminary reconnaissance work of this type is permitted to satisfy the overt acts requirement, the notice function of that requirement for all practical purposes would be eliminated.

In sum, the stipulation between Bar 70 and Tosco did not constitute an admission that Tosco's 1976 field trip satisfied the overt acts requirement for initiating an appropriation for the second 100 c.f.s. of water. Nor did Tosco's activities satisfy the overt acts requirement for a conditional water right to divert the second 100 c.f.s. of water with an appropriation date of December 11, 1979.

That part of the judgment granting the conditional decree for the second 100 c.f.s. of water is accordingly reversed.